The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning, everyone. I appreciate everyone being here, particularly those of you from Charleston School of Law. We're particularly excited to have you join us. A warm welcome to the lawyers. We thank you for traveling to the Holy City to participate in arguments today. We know it's an imposition, particularly given that you're both from Virginia and West Virginia, to travel down here. I want to thank the members of the court here in Charleston and the staff. It's a particular pleasure for us to be here in Judge Saul Blatt's courtroom, his portrait hanging in the back. They're awfully fond memories, many of which we shared in the back earlier about him and the time that he spent there. And then finally, I want to say what a pleasure it is for me to sit with Joe Anderson and Judge Traxler, both of who exemplify what great judges should be. With that, Mr. Martingale. Thank you, Your Honor. Kevin Martingale on behalf of the appellant in this matter, Antonio Pissarro, Jr. First, I want to tell you I appreciate having an opportunity to be here in Charleston to argue before you today. This matter involves Mr. Pissarro's claims against the Virginia State Police. And the first thing that happened in his case when he filed it in state court and was removed to federal court is that the State Police filed a 12B6 motion to dismiss. And ultimately, Judge Jackson determined that 11th Amendment immunity applies to his ADA claims. We believe that that is incorrect, and we rely upon the first issue of waiver by removal, relying primarily upon the Lapides case from the United States Supreme Court. And interpretive authority after that. In addition, we contend that... But wouldn't we have to overrule Stewart to do that? I mean, I understand that you sort of have to make the argument that you're making, but you do agree that that would require us to change our view after Stewart. I've thought long and hard about that, and I actually think there is a way that it could be reconciled with Stewart, and it's this. There's language in the Stewart opinion that says that it is not appropriate to rely exclusively upon the waiver. Excuse me, exclusively upon removal as constituting waiver. And then the next thing that is talked about, and that is at page 489. The next part of the opinion describes a variety of circumstances where the state might voluntarily invoke jurisdiction. Now, we don't have the state, for example, filing a lawsuit as the following examples in the Stewart case talk about. But what we do have is the state making a lot of statements in a variety of publications with no qualifications, no exceptions explained at all, where they explain that employees have the absolute right, if they believe they're the victim of ADA-protected discrimination, they have the absolute right to file an EEOC complaint, knowing full well that what that will eventually lead to is a right to sue letter, which will then lead to potentially litigation. And then they try to come in and they file a pleading claiming 11th Amendment immunity. So our position is that through other statements and conduct, they have invited exactly the problem that we are now dealing with here today. Their hands are not clean in this. And if you go back and reread what is said in the Lapides case, that's the type of evil or harm that the U.S. Supreme Court was concerned about when it laid down a bright line rule. They're worried about gamesmanship and manipulation and obtaining an unfair tactical advantage. So when you read all of the different publications put out by the state, including an extensive discussion in their own human resources manual that is published online, Chapter 15, entitled Legal Issues, they have this lengthy discussion of protections dealing with disability discrimination. Nowhere in there is there anything explaining that they claim 11th Amendment immunity relating to the very statutes they discuss. And that's important. But in fact, they don't say the opposite either, right? They don't say that they're waiving 11th Amendment immunity in any of those publications. They do not explicitly discuss immunity whatsoever. What they do is they direct anybody who has a complaint to file whatever complaints they think are appropriate. They explain there's a state process. They also explain that you have the absolute right to go file a complaint with the federal EEOC. And our contention is that those constitute waivers. They're directing the employees on how to do it, and they're directing their own human resources personnel on what to do, to cooperate in processing, whether it goes state or federal. Ms. Barnett, let me, I hate to interrupt you. Yes. With regard to Stewart, I'm looking at footnote five, and it says, majority puts in the footnote, that they're not talking about the narrow principle of 11th Amendment immunity when they use the term sovereign immunity. So why do you think they put that in there if it doesn't limit the application of that case? Well, I don't know that the Stewart court could have anticipated the type of situation we're dealing with here. I think what Stewart was saying. The question is fundamental. Does Stewart announce a rule with regard to 11th Amendment immunity, or is it something else? Well, I think that Stewart is a procedural analysis. They're saying that the mere procedure of removing from district court, excuse me, from state court to federal court does not waive the right to make the argument. But that's not what the footnote says. Footnote says, to be precise, by sovereign immunity, we're referring to the longstanding principle of state sovereign immunity implicit in constitutional order, not the more narrow principle of 11th Amendment immunity. So it seems to me that's a limitation on this case, that they're making clear, it seems to me, but I could be wrong, that they're not talking about 11th Amendment immunity. And I agree that Stewart is confined to those facts and tries to be a narrow holding on that issue. I think that what Stewart also signals is that if you do something else where you invite jurisdiction, then in that situation, the outcome would be different. And that's why the Stewart case goes through that analysis. That's how I read Stewart. But since that time, of course, there's also been the San Soto versus Town and Exit case that came out in 2013. It was not focused on this issue, but the Fourth Circuit did say that the Lapidus case established, quote, a bright line rule, any voluntary removal waives immunity. So that's what it said in 2013. I note that Stewart has been cited only one time since it was issued in 2005, cited only one time by the Fourth Circuit. So I would submit to you that this would be an appropriate case to try to reconcile Stewart with San Soto, but also consider whether or not really the test might be waiver through removal plus. Maybe that's the standard that ought to be adopted. Is there something else on top of waiver that can be combined together to say, yes, you know, you removed it, plus you invited this. Can I just take two arguments that don't quite work in trying to sort of shove them together, right? You take there's an explicit waiver argument, and I took that to be basically your, you know, the publications argument. And then you have the litigation conduct argument that I think is sort of the Stewart-based argument. Right. You might see that neither of those quite get you there, but I don't know how shoving them together changes that analysis at all. Well, I would argue that either one should get us there. But I would also say that when you go back and look at what the whole point of the Lapidus opinion from the U.S. Supreme Court is, it's designed to prevent gamesmanship, what I like to call the bait and switch, where employees are baited into believing that they enjoy the full range of protection given to them by federal law. They are told to go file with the EEOC. They do that. In this case, my clients complained the EEOC sat there for over three years. Even if they're told to file, I mean, give me the, what is the best example you have of an explicit waiver? Not with respect to EEOC, because that's not the issue. The question is the Title VII or the ADA issue. And so what's the most explicit example in the materials that you've provided us that you think provides that explicit waiver? I would say that it is the Division of Human Resources manual for employees and the Division of Human Resources manual for the human resources personnel, the work sharing agreement between the state and the EEOC where they process each other's complaints. And it's really what your view is, is reading all of those together is what leads you to that conclusion. And it's not only that, but when you read all those together, and particularly when you look at the manual, the manual does explain that there are some exceptions to some of the things that are talked about there. For example, they explain the limitations of who's eligible to pursue a complaint with the Council on Human Rights. Under state law. Interestingly, they don't have any qualifications, pullbacks, reservations, or anything with regard to the ADA. So when you look at that Chapter 15 as a whole, they get down into the nitty-gritty of which justice on the Supreme Court said what. They talk about what Justice Scalia said in the case. That's the difference between an implicit and an explicit waiver, right? Our case law says, and the Supreme Court said, it requires an explicit waiver of 11th Amendment immunity. You may say that they've implied that they're not going to assert it by not talking about it, but that's not an explicit waiver, is it? I would argue, too, that without using the word waiver, when they direct employees on both the human resources side and the employment, the complaining employee side, to go do something with the EEOC, that constitutes a waiver. And it's like a broad waiver. But an EEOC case is not the equivalent of an ADA case. Well, telling someone who's got an ADA complaint to go to the federal EEOC, where they know full well that eventually there's going to be a right to sue letter, and then in suing litigation. There may be a sue letter. There may be a suit, but that is not a necessary component of the EEOC proceeding. They're allowed to go to the EEOC proceedings without ever filing an ADA claim. Of course, it could be resolved. That's one thing that could happen. Well, they could choose to not proceed it because they believe it doesn't have merit. They could just stop the proceeding after the EEOC, right? Oh, sure. That could happen. But they know that you file with the EEOC when it is a matter over which the EEOC has jurisdiction. They wouldn't tell you to file a grievance about your boss being mean to you and go to the EEOC with that. What they're saying is that you have federal protections. They name all these different laws and statutes that provide those protections. And if you have a complaint, you have the right to go to the EEOC, file your complaint there, start that process. So our contention is when you look at those direct instructions that are given without any caveats or carve-outs, that that should be deemed to be waiver. It's more than waiver. It's an instruction to go do it. And they're told when you look at these various policies that they have the absolute right to file under state procedure or federal or both. They're told they're cumulative. They're not told they have to pick one. If I may, I'd like to move quickly to the other argument, which is – Stewart and Sansada. Yes, sir. I presume you would agree that Sansada is an 11th Amendment case. Yes, sir. Okay. My question is this. Sansada doesn't even mention Stewart. Now, if Stewart's an 11th Amendment case, how can you write Sansada and not cover or mention or distinguish Stewart? I found it to be puzzling there was no mention of Stewart because what the Sansada case does is describe LAPIDA and explain that that laid down a bright-line rule, which is what other federal circuits have said about the LAPIDA case. They said it's a bright-line rule. Any removal equals waiver. And so that's what Sansada says without mentioning Stewart. I don't know exactly how you reconcile those two, putting them together. That's why I think that would be an important thing to try to do with this. But some of the circuits, there are different rules in different circuits for how they've interpreted LAPIDAs, and some of them have looked for the creation of – It's not about Stewart, though. If Stewart, a Fourth Circuit case, deals with 11th Amendment immunity, I don't see how you can write Sansada and not mention Stewart. And yet Sansada, dealing clearly with 11th Amendment immunity, doesn't even mention Stewart. It would seem to me the only explanation, unless it's an oversight, is that those two cases deal with different immunities. And I'm not sure how to reconcile those two. I found, obviously, the quote very helpful from Sansada that says there's a bright-line rule created by LAPIDAs because that's how clearly we read LAPIDAs and want it to be used. But Stewart seems to require something in addition if you're going to claim that there was waiver created by removal, which we acknowledge. And so if you're trying to stay consistent with Stewart, the next part of that opinion talks about whether or not there was something done by the State to create the issue or the problem of potential waiver. And we contend that on this record, which is a very interesting record. You may never see anything quite like it. With all the publications put out by the State, they have created the very problem that they're now complaining about. And notably, nothing was said about them being immune throughout all of the EEOC processes lasting three and a half years. Nothing was said until at the four-year mark, when suit was filed. Then they came out and said, we're immune. And nothing they published. I don't want you to use up all your time on this issue. You've got another important issue I know you want to get to. Yes, sir. So turning to the next one, it's the claim preclusion issue. And I would argue that there is not claim preclusion, that that was a mistake by the District Court. And I would point out these following things. First of all, the focus of each process is entirely different. The EEOC complaint was filed at a time when Pissarro remained employed by the State Police. He was complaining about broad pre-termination misconduct. When he was fired, all of his other grievances, and there were several pending, went away. Because he was now fired. He had no longer any current employee standing to be pursuing grievances relating to being mistreated by his superiors. He switched over and filed a grievance termination form, which allowed him to skip several steps. And it was focused on the single issue of being fired. So first of all, the focus of each was different. Why did the parties agree to stay the federal proceeding and let the state proceeding go forward first? I was contacted by opposing counsel. It was explained that they thought that there were going to be some arguments forthcoming that were going to be of this nature. And that for efficiency reasons, both sides shouldn't be wasting time on discovery and further court proceedings until we figured out what was going to happen with the state court proceeding. So it was simply an agreement. Nobody was attempting to waive any arguments or anything of that nature. We were simply trying to be cooperative. And the court thought that that was an efficient way to go. But the two processes are very different. The focus of each is different. And that's one of the points that was raised in the recent Bennett v. Garner opinion issued by the Fourth Circuit. One thing to look at is what's the focus of each proceeding? The next is the timing. With regard to an EEOC complaint, the complaining party has 300 days to file a complaint. The state police actually said in their answer to the lawsuit, and this is at Joint Appendix 140, Paragraph 2, that some or all of the complaints were late. So they recognized that there was a deadline that Pissarro was operating under, and he had to meet that deadline. The grievance was filed in accordance with 2.2-3000 at seek. And what that does is that seeks to provide an expedited way for an employee to try to resolve an employment dispute. Mr. Martindale, I noticed you're out of town, but I want to ask you one question before you leave. Do you agree that Virginia preclusion rules will decide this issue? The state of Virginia's preclusion rules will be used to decide whether or not the preclusion ruling was appropriate? Yes, sir. Okay. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Toby Heitens on behalf of the Appellees. I'd like to make two basic points this morning. First, as in Stewart, Virginia is not seeking to regain an immunity that it has given up. It is asserting an immunity that it has never lost in the first place. And second, under Virginia's preclusion law, which I agree is controlling in this case, Mr. Pissarro was entitled to ask a state court or a federal court to review the merits of his termination. But under Virginia preclusion doctrine, he was not allowed to do both of those things. So which sovereign immunity are you claiming? I think the easiest way to resolve this, Judge Traxler, is by the holding of Stewart the broader sovereign immunity of which Eleventh Amendment immunity is a part but does not encompass the whole. This Court said at the beginning of its analysis in Stewart that it is important to distinguish between the related but not identical concepts of state sovereign immunity and Eleventh Amendment immunity. And we think this is just squarely controlled by this Court's decision in Stewart. This is the quote from 393 F. 3rd 490. We hold that North Carolina, having not already consented to suit in its own courts, did not waive sovereign immunity by voluntarily removing the action to federal court. That is a square holding of this Court. It is directly on point, and it resolves the First Eleventh Amendment issue in this case. So you're viewing what I would call, and I think Stewart calls state sovereign immunity, as a part of Eleventh Amendment immunity? I'd put it the opposite, Judge Traxler. I think state sovereign immunity is a broader concept that includes but is not limited to Eleventh Amendment immunity. Okay. But when I looked at your brief and I read all your cases, they're all Eleventh Amendment cases, except for the one paragraph, I think, of one page where I seem to have understood that you were arguing state sovereign immunity. But state sovereign immunity would be what you would claim if you were in state court and sued by a citizen of your state. You wouldn't be claiming Eleventh Amendment immunity. You'd be claiming the state sovereign immunity. That's correct, Judge Traxler. And so that's what you're asserting today? Yes, Judge Traxler. Well, we're asserting both. And I would certainly agree that our briefs have perhaps not been as diligent as they could about carefully distinguishing between the two. In fairness, I think this Court has acknowledged that courts sometimes haven't been as careful as they could between distinguishing between the two of them. But I will say that heading 1B of our red brief says the Commonwealth did not waive its sovereign immunity, and we cite Stewart for that proposition. And that's sort of the point of Stewart, right? Because it's referring to whether the immunity of whatever type was waived in state courts. So sort of by definition, it's referring to the same type of state sovereign immunity. That's certainly correct, yes. And I think that also resolves the sandbagging argument based on Lapidus. The case is fundamentally different from Lapidus in the following sense. The reason that the Court could say that in Lapidus that Georgia was attempting to engage in sandbagging is because they had given up immunity in their own courts. So they were trying through the expedient of removing a case from state court to federal court to acquire an immunity that they would not have had in state court. But that's not what Virginia is trying to do here, and that's not what North Carolina was trying to do in Stewart. We are simply asserting an immunity that we could have asserted in state courts, and there's nothing sandbagging about doing that. That's simply preserving an argument we could have made in state court. What's the response to Judge Traxler's question about Sansoda? What happened there? Why does that not reference Stewart, and what are we to do with it? Sure. Well, I think first and foremost, all you need to say about Sansoda is that that wasn't a sovereign immunity case at all. That was a case about the Williamson County exception to the takings doctrine of the Fifth Amendment, and the court was drawing an analogy to sovereign immunity jurisprudence. So I don't think that's a holding that is in any way, shape, or form about sovereign immunity, and so it was by its very terms dicta because that case didn't involve sovereign immunity. So all the court— I'm sorry to interrupt you. I'm sorry. I want to make sure. When you say sovereign immunity, that's a very broad concept. It seems to me it might be more appropriate to say state sovereign immunity. I apologize. To distinguish it from Eleventh Amendment. State sovereign immunity. I apologize. Yes. So Williamson County was not about state sovereign immunity. Excuse me. Sansoda was not about state sovereign immunity. Sansoda was about the Williamson County requirement for bringing a takings claim. In the course of doing that, the court drew an analogy to Eleventh Amendment jurisprudence, but that wasn't about Eleventh Amendment immunity. It wasn't about state sovereign immunity, and as Judge Traxler, you pointed out, it doesn't even cite this court's most directly on-point case, which was Stewart. So I certainly don't think—as far as I understand under this court's procedures, one panel does not have the power to overrule another panel, and I certainly don't think the court should interpret an opinion about a different issue that doesn't even cite the relevant decision and is referencing state sovereign immunity solely for purposes of an analogy as overruling or modifying this court's square on-point holding. I wanted to go back then also to the point about waiver in terms of the conduct. I think there's a really critical distinction that's getting lost here, and that is Virginia is in fact bound by the Americans with Disabilities Act. What Garrett says is that you cannot sue the state of Virginia for money damages for violating the ADA, but in footnote 9 of the Supreme Court's opinion in Garrett, the court says, quote, Title I of the ADA still prescribes standards that are applicable to the states. So when we advised Mr. Passaro that we were required to follow the ADA, that was a true statement of law. There was nothing untrue about that statement. That is a statement of our obligations under Garrett. And when we advised him he could go to the EEOC, that was a true statement of law because the Commonwealth of Virginia has never claimed sovereign immunity from EEOC proceedings. So everything we told him was completely true in terms of his rights under the existing law. I'm going to take you back to this other issue. Of course. Did the district court in this case do you think understand these distinctions between immunities, state sovereign immunity, because it looks to me like he's ruling on 11th Amendment immunity and not looking at it from the point of view of state sovereign immunity. Judge Traxler, I would agree the district court stated its holding in terms of 11th Amendment immunity, but I would also say that the district court based its holding expressly on this court's decision in Stewart. The court quotes this decision in Stewart and then says for that reason Virginia is immune. And I guess I would say it's not even clear that we don't have 11th Amendment immunity because this court in Stewart in footnote 5 specifically reserved the question about whether we have 11th Amendment immunity in this situation. I guess our fundamental submission, though, is you don't have to decide that because it is absolutely clear under the holding of Stewart that we do in fact have state sovereign immunity. And I think we've preserved that. The district court relied on Stewart in part because we cited Stewart to the district court as a controlling holding of this court for the proposition that we were immune from Mr. Passaro's Americans with Disabilities Act lawsuit. It just always makes me nervous. I know we can do it to rule on an issue the district court hadn't addressed. And I understand that, Judge Traxler. I do think there are two reasons why the court should be more comfortable here. First, just as a predictive matter, if you remand to the district court, we will move to dismiss. We will very carefully say the words state sovereign immunity, and we will say this is squarely controlled by the Fourth Circuit's decision in Stewart. So there's literally no discretion for the district court to exercise. That's reason number one. Second, this is an immunity-type defense. The Supreme Court has emphasized that one of the fundamental purposes of state sovereign immunity and 11th Amendment immunity is to prevent the Commonwealth from having to be sued in the first place. And so I would suggest that in a situation where the law is completely clear that we are entitled to state sovereign immunity, that it's inconsistent with that notion to remand this case for further proceedings in that situation. I'm going to ask you to switch gears. Of course. Happy to. I want you to switch over to the claim preclusion issue. Absolutely. So first and foremost, I apologize. I'm going to try to focus you a little more on what I'm interested in. Yes. I suspect you would agree that a plaintiff going through federal court would have remedies available to him that would not be available through the state grievance process. I don't. Remedies, yes. I think he would have the potential of getting Compensatory damages, injunctive relief, for example. Compensatory damages was the one coming to mind. That's been important to our court in other areas in determining issue claim preclusion concerns. Should that cause us a problem? It should not. Should there be additional remedies if they were in federal court? It should not, and here's why. Because I agree with Mr. Martingale that under 28 U.S.C. 1738, this is not the federal common law of preclusion we're talking about. This court is bound by Virginia's preclusion rules. And under Rule 1.6, which is the rule in Virginia that governs preclusion, it does not matter, quote, the particular remedy sought in the first proceeding. That's exactly right. But under Funny Guy, remedies sought is not the same thing as remedies unavailable, right? So if remedies were unavailable, which I understand to be Judge Traxler's point, in the state proceeding, and let's posit for this point that they were, you couldn't seek compensatory damages, for example. I believe that's correct. Then it's not that they weren't sought. They could have been sought but weren't, right? That's what 1.6 says, particularly in light of Funny Guy. You might read the language of 1.6 differently, but certainly after Funny Guy, you have to say it's what was available to him. And Judge Traxler's point is compensatory damages, for example, were not available in the state proceeding. Therefore, the Title VII claim isn't precluded. I think our view would be that that's still, that's not correct because Funny Guy does not. Why? The reason is because that regardless of the particular remedy sought is an addendum at the end of Rule 1.6. What Rule 1.6 starts out by saying, though, it says, quote, the cause of action is defined as, quote, one arising from the same conduct, transaction, or occurrence. I totally get that, and you could read that extremely broadly. But what I think we take Funny Guy and subsequent Virginia court cases to say is that it requires that the claim could have been brought. If it could have been but wasn't, then it's included. But if it could not have been, so for example, you could not have brought a compensatory damages case, Title VII, then it's not encompassed. And I get the language of 1.6 is a little ambiguous on this, but Funny Guy is not ambiguous, I don't think. You have to have been able to bring that in the state court action. I guess I would say I think there's a lot of language in the Funny Guy opinion, and I can see there is the language that you just cite. There is also language that cuts pretty sharply the other way, because there's language in the Funny Guy opinion that says you're entitled to one shot at the particular problem or series of problems not to. That's almost a direct quote from Funny Guy. That's the general idea of preclusion, right? The question we're asking is how does it apply? It's not just Funny Guy. D'Ambroso, I'm not sure how you say it either, but also from the Virginia Supreme Court, says it doesn't matter whether it, you know, if you could have brought it and didn't, then it's precluded, right? That part is clear. But if you could not have brought it, and this is exactly Judge Traxler's question, and you could not have brought a Title VII for compensatory damages in the state court action, you agree with that, right? I have not seen any basis to believe that he could have. That seems to me to suggest that it could not have been brought in the state court proceeding, and therefore at least under Funny Guy, if not the language of 1-6, preclusion doesn't apply. Well, I do want to go back on the question of whether I agree that he could not have brought a cause of action for compensatory damages labeled as compensatory damages. I do want to emphasize, though, that he could have brought a claim for back pay. He could have brought a claim for reinstatement. So it's not clear to me what additional he could have gotten. I mean, I concede to you as a conceptual matter he can't bring a claim for compensatory damages under the Virginia grievance procedure, as I understand it. It's not to say that that could not have resulted in an award of money to him. It certainly could have resulted. Absolutely. But we understand those as being different, right? Yes. And we talk about different remedies more than just talking about what's money, right? I agree. Compensatory damages are distinct. Title VII permits them. The state doesn't. I don't see how we're sort of continuing that sort of discussion. Sure. No, and I understand that argument. I guess I would say that even if the court were inclined to read Funny Guy that way, that wouldn't be an argument that he's not subject to preclusion at all. It's an argument that he's not subject to claim preclusion because there would still be a separate issue of whether this entire lawsuit is issue precluded as a result. Which you have not yet raised, right? It certainly has not been litigated that way in the district court. And it is not before us. I think that's correct. I'm not saying whether you can or can't on remand. Right. I'm just saying that's not before us. And that's the only thing I was saying, Judge Richardson. If the court were to read Funny Guy as a way of rendering the district court's claim preclusion holding wrong, we would respectfully suggest that the court should make sure to write its opinion in such a way as to make sure that it's not ruling out the possibility we could raise issue preclusion. Because many of the same arguments for claim preclusion here would apply that there would be issue preclusion with regard to a number of these arguments. Let me give you a hypothetical. Let's suppose this plaintiff in the case proceeds as this one did. He files his EEOC complaint. He also later files a state grievance. He gets a decision on his state grievance complaint from the hearing officer. And he stops right there. Doesn't appeal it. Doesn't take it into court. He stops right there. And then elects to proceed with his federal claim and pursue it all the way through. Would we have the same situation? We would not. It would be different, wouldn't it? It would be different. The rules would be different. If he had stopped and not taken his claim into state court. Yes. But I think that cuts in favor of us, not in favor of him. Because that's this court's decision in Dion. If Mr. Pissarro wanted to avoid the risk of any preclusion whatsoever, this court's decision in Dion provides him a road map. The road map is do not seek judicial review in state court. Because if you don't seek judicial review in state court, there is no state court judgment that would be entitled to preclusive effect. That's this court's holding in Dion. Because that's what Dion said. Exactly. If you stop in state court, in that case, that issue never gets to state court. It stays in the administrative proceedings. It never gets to state court. Then the rules are different. Then we use federal rules to determine if there's preclusion. Well, absolutely. Because then there's no state court judgment to afford full faith and credit to under the statute and the Constitution. But I think that's not a small matter. I mean, I think the fundamental submission that we have on preclusion is that under preclusion doctrines, going to state court was a big deal. That was a decision that had consequences. The moment you submit your lawsuit to the state court, you are submitting the transaction occurrence or incident for judgment by the state courts, and that's going to have preclusive effect and says you can't go to federal court later. I mean, it's basically the contrast between this court's published decision in Dion and its unpublished decision in Devani. The difference between Dion and Devani is that Dion did not go to state court, was not precluded. Devani did go to state court and was precluded. And that has a consequence. I mean, the fundamental premise of preclusion doctrine is that you get one bite at the judicial apple you don't get two. And because our submission, that's what happened here, we respectfully request this court affirm unless there are further questions. Thank you, counsel. Mr. Moringale. Thank you, sir. I would first like to start with this point. The entire point of the administrative process that Passaro went through seeking to overturn his termination was focused on termination and nothing else. The EEOC complaint was a much broader complaint dealing with a lot of other generally bad behavior and mistreatment of him. So the focus was entirely different. But with regard to exercising his administrative remedies, I have to point out it is so puzzling to hear the arguments advanced by the state police because at Joint Appendix 141, Paragraph 9, you will see an assertion and a complaint by the state police that Passaro failed to exhaust all of his administrative rights and remedies. So this is truly one of those situations where he can't win, according to what the state police is arguing. If he stops, they would hound on that argument further. If he seeks to overturn his termination and goes through that process as far as it's allowed, they still make the claim that he hasn't exhausted all of his administrative rights and remedies. But I think that the best and most hopeful thing I've heard in this discussion going back and forth is this. The Funny Guy case did indeed explain, using this word, convenient trial unit, at page 154 of the Virginia report version, that one of the things you look at is whether or not there was a feasible way for the litigants to put everything together in one convenient trial unit. There is no mechanism in federal law or in state law to combine a state grievance of the nature involved here with a federally based lawsuit. It can't be done. But you could have combined the claims, couldn't you? I mean, there's nothing to prohibit you from amending your EEOC complaint to add termination if you wanted to. Certainly, that could be amended to add termination. But the thing, I think one of the key points here is that you still can't literally put these two things together. The federal suit would have no power of review over the state grievance procedure. You still can't put them together. You may not be able to combine remedies, but you can combine claims. And isn't that what the claim preclusion looks at, is the claim? That is one of the things that claim preclusion looks at. The other one is whether or not there is a feasible way to put all of it into one, quote, convenient trial unit. And that's what the Supreme Court of Virginia has said about its own rule, that that is a key factor. Can it be combined into one proceeding? And there is literally no way to put these together into one convenient trial unit. I also think it's important and highly significant that the remedies are very different. All that a hearing officer is allowed to do is three things. One, reinstatement. Two, award back pay. And three, under certain circumstances, award attorney's fees. And even then, it gets reviewed internally by other people at DHRM to see whether or not they agree with that. That is a far cry from the level and type of relief that is available in a federally-based claim. You can also get in the federal system, or if it's a state court, based on the federal laws, you can also get injunctions. You can also obtain compensatory damages. The relief is much broader and more significant, and that's simply not available in the very limited state system. I would also point out that the nature of the court's involvement with a state grievance procedure is extremely narrow. I have yet to read a single published opinion reversing or upholding a trial court reversing a hearing officer and reinstating. The standard is so exacting that the only way that the court is allowed to intervene and overturn when a hearing officer is done is if it is, quote, contradictory to law. It can't reweigh the evidence. It can't say that the evidence was insufficient. It can't get into, well, you shouldn't have admitted this or you should have admitted that. It is such a narrow scope of review that it is truly unlike any other scope of review under Virginia law. So the court involvement is entirely different. So to say that the fact that he sought review of his grievance process somehow precludes him from availing himself of the much broader set of rights and remedies available in the court system as a result of his EEOC complaint is unfair. It really denies him a fair opportunity to bring his complaints and claims. And the last thing I would point out is this. There's no jury trial available in the grievance procedure. The grievance procedure is designed to be, quote, an immediate way for employees to try to resolve disputes. It is not designed to supplant the other broader rights and remedies available to employees. It's designed, hopefully, to bring about a quick and affordable resolution for the employees. Nothing in that would suggest that if an employee pursues that and then there is a state review of that and the limited review available in court, that somehow precludes that person forevermore from seeking relief in court. So for those reasons, we would respectfully request that you reverse the rulings of the district court and remand for further proceedings. Thank you very much for your time. Thank you, counsel. We will step down, brief counsel as we do traditionally. We will then take a very brief recess to allow those of you that are sitting to trade out with your colleagues who are standing. Thank you.
judges: Julius N. Richardson, William B. Traxler Jr., Joseph F. Anderson Jr.